°

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

GOLDEN LOGISTICS, S.A. DE C.V.,   §
                                  §
            Plaintiff,            §
                                  §
vs.                               §   Civil Action No. L-11-42
                                  §
DANNY HERMAN TRUCKING, INC.,      §
                                  §
            Defendant.            §

MEMORANDUM AND ORDER

Plaintiff Golden Logistics, S.A. de C.V., initially filed this action on March 14, 2011, in the 111th Judicial District, Webb County, Texas.  (Dkt. 1-2 at 5.)  Defendant Danny Herman Trucking, Inc., removed the case to this Court on April 11th, 2011.  (Dkt. 1.)  Danny Herman asserts that Golden's claims are preempted by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. §§ 11707 et seq.  (Id. at ¶4(a).)  Pending are:

- Danny Herman's motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P. (Dkt. 2); and

- Golden's motion to remand the case to state court (Dkt. 3).

I. BACKGROUND

This case concerns a load of wearing apparel transported from Torreon, Mexico, to Hebron, Kentucky.  The allegations in Plaintiff Golden's Original Petition (Dkt. 1-2 at 5–8), and the

parties' briefing regarding Golden's motion to remand (Dkt. Nos. 3, 5, 6, 10, 11), indicate the following:

The load originated at a facility in Torreon, Mexico, belonging to shipper, Apparel International, Inc. Consignee Levi Strauss & Company ordered the wearing apparel that would make up the load and requested that it be delivered to Hebron, Kentucky. (Dkt. 5 at 1.) Apparel International hired Plaintiff Golden to provide or arrange transportation to Hebron from Torreon. Golden received the load in Torreon and delivered it to Nuevo Laredo, Tamaulipas, Mexico, on September 22, 2009. In Nuevo Laredo, Golden put the load onto a tractor trailer belonging to Defendant Danny Herman, and a drayage company, hired by Golden, brought the load through customs and delivered it to Danny Herman's yard in Laredo, Texas, where the load remained from September 22 until September 24, 2009. (Dkt. 11-1 at 1.) On September 22, Golden contracted Danny Herman to haul the load from Laredo to Hebron. (Orig. Pet., Dkt. 1-2 at 5–8, at ¶ 4.1.) Danny Herman's equipment was used for the transit from Nuevo Laredo to Danny Herman's yard in Laredo under a standing "Equipment Interchange Agreement" between Danny Herman and Golden, but Danny Herman did not otherwise participate in the Torreon-to-Laredo stage of the load's journey. (Dkt. 5 at 2; Dkt. 6-1 at 5–6, 9–10.) Danny Herman transported the load to its yard in Nashville, Tennessee, on September 24, 2011.

(Dkt. 1-2 at 5-8, at ¶ 4.2.)   After the load spent over two weeks in Nashville, Danny Herman delivered it to Hebron, Kentucky, on October 9, 2009.   Golden alleges that consignee Levi Strauss & Company's subsequent inspection of the load revealed that "there were 2,993 units missing . . . ."   (Id.) "As a result . . . [Golden] was charged back approximately $34,999.99" by Apparel International.   (Dkt. 1-2 at 5-8, at ¶ 4.3; Dkt. 3 at ¶ 13; Dkt. 5 at 1.)

## II.  APPLICABLE LAW

A.   Preemption

A defendant may remove a state-court civil action over which the district courts of the United States have original jurisdiction, as long as the district court could have exercised jurisdiction had the action been originally filed there. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987); Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 7-8 (1983).   Title 28, United States Code, Section 1331, confers jurisdiction on the district courts over "all civil actions arising under the Constitution, laws, or treaties of the Untied States."   However, "the district courts shall have original jurisdiction of an action brought under section 11706 or 14706 of title 49, only if the matter in controversy for each

receipt or bill of lading exceeds $10,000.00, exclusive of interests and costs."  28 U.S.C. § 1337(a).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Caterpillar, 482 U.S. at 392.  Potential defenses, including federal preemption, do not provide a basis for removal.  Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 2 (2003).  However, the well-pleaded complaint rule does not apply to state-law claims arising from conduct in an area where a federal statute has so completely preempted state law that any cause of action is necessarily federal.  Id.; Arana v. Ochsner Health Plan, 338 F.3d 433, 437 (5th Cir. 2003).  This exception applies only where the effect of federal preemption is "'that the plaintiff's cause of action is either wholly federal or nothing at all.'"  Hoskins v. Bekins Van Lines, 343 F.3d 769, 773 (5th Cir. 2003) (quoting Carpenter v. Wichita Falls Ind. School Dist., 44 F.3d 362, 366 (5th Cir. 1995)).  Citing authority from outside the Fifth Circuit, Golden asserts that "'the complete preemption doctrine does not apply to the Carmack Amendment . . . .'"  (Dkt. 3 at ¶ 9 (quoting Lamm v. Bekins Van Lines Co., 139 F.Supp.2d 1300, 1314 (M.D. Alab. 2001)).)  That assertion is flatly contrary to Fifth Circuit precedent holding

that state-law claims arising from carriages governed by the Carmack Amendment fall within the complete-preemption exception to the well-pleaded complaint rule.  See Hoskins, 343 F.3d at 778.

Regardless of how Golden frames the claims in its Original Petition, its state-law remedies are completely preempted if the Carmack Amendment governs the apparel's carriage.  Accordingly, removal was appropriate if there was preemption and the amount in controversy for each receipt or bill of lading exceeds $10,000.00, exclusive of interests and costs.

B.  Carmack's Scope

If the Torreon-to-Laredo and the Laredo-to-Hebron journeys were entirely separate carriages, then the interstate character of the latter journey suffices to bring this suit within the Carmack Amendment.  See Reider v. Thompson, 339 U.S. 113, 118 (1950) ("[Without a through bill of lading], it is not significant that the shipment in this case originated in a foreign country, since the foreign portion of the journey terminated at the border of the United States.")  Carmack does not apply, however, if the Laredo-to-Hebron carriage was merely the latter leg of a larger carriage from Torreon to Hebron. Carmack's provisions governing motor carriers and freight forwarders apply to entities which provide transportation or

service subject to the jurisdiction of the Surface Transportation Board under 49 U.S.C. §§ 13501 or 13531. 49 U.S.C. § 14706(a)(1)-(2).  Both § 13501 and § 13531 apply to transportation that is "between . . . a place in the United States and a place outside the United States."  Sections 13501 and 13531, as well as 49 U.S.C. § 10501, which defines the STB's jurisdiction over rail transportation, are successors to former § 20(11) of Title 49, which governed all common carriers and transportation companies.  <u>See</u> 49 U.S.C. § 20 (1976); <u>see also</u> <u>Kawasaki Kaisen Kisha, Ltd., v. Regal-Beloit Corp.</u>, ____ U.S. ____, 130 S.Ct. 2433, 2447 (2010) (explaining amendment history).  Section 20(11) applied to "transportation [between points in different states] or [transportation] <u>from</u> any point in the United States <u>to</u> a point in an adjacent foreign country . . . ."  49 U.S.C. § 20(11) (1976) (underlining added).  In 1978, amendments to § 20(11) replaced the "from . . . to" formulation with "between . . . a place in the United States and a place outside the United States" which now appears in §§ 10501[1], 13051, and 13531.  Congress indicated that the 1978 amendments "may not be construed as making a substantive change . . . ." § 3(a), 92 Stat. 1337, at  1466.  Some Courts nevertheless interpreted the 1978 amendment as making Carmack applicable to interstate

---

[1] The relevant language in Section 10501 reads "a place in a foreign country" rather than "a place outside the United States."

transportation within the United States originating in an adjacent foreign country regardless of the direction of travel or the use of a through bill of lading. E.g., Berlanga v. Terrier Transp., Inc., 269 F.Supp.2d 821, 827 (N.D. Tex. 2003) ("Because the shipment at issue in this case is between a point in the United States (Plano, Texas) and a point in a foreign country (Mexico City, Mexico), it comes within the ambit of the Carmack Amendment."). However, the Supreme Court took a contrary position with respect to § 10501 in Kawasaki Kaisen Kisha, Ltd., v. Regal-Beloit Corp., ____ U.S. ____, 130 S.Ct. 2433, 2447-48 (2010) ("The Court will not read Congress' nonsubstantive recodification of Carmack in 1978 to create such a drastic sea change in practice in this area."). Accordingly, the Court held that Carmack did not apply to an intermodal carriage by sea from China and then by rail to destinations in the United States. Id. at 2449. The Court of Appeals for the Second Circuit has held that Kawasaki Kaisen's reasoning applies equally to § 13051. Royal & Sun Alliance Ins., PLC v. Ocean World Lines, Inc., 612 F.3d 138, 145-46, 46 n.13 (2nd Cir. 2010) (holding that Carmack did not apply to an intermodal carriage by sea from Germany and then by truck to a destination in Bourbon, Indiana). Carmack does not apply to an intermodal carriage from Germany to a destination within the United States. It is not entirely clear whether Golden functioned as a carrier or a

freight forwarder in this case.  Regardless, Carmack does not apply if the Laredo-to-Hebron journey was part of a larger carriage from Mexico covered by a through bill of lading.  A bill of lading serves as both a  "document acknowledging the receipt of goods by a carrier or by the shipper's agent and the contract for the transportation of those goods . . . ."  BLACK'S LAW DICTIONARY 189 (9th ed. 2009); see also Royal & Sun Alliance, 612 F.3d at 141 n.3.  A "through" bill of lading is one "by which a carrier agrees to transport goods to a designated destination, even though the carrier will have to use a connecting carrier for part of the passage."  BLACK'S LAW DICTIONARY 189 (9th ed. 2009).  Whether a particular document is a through bill of lading is a question of fact.  Union Pac. R.R. Co. v. Greentree Trasnp. Trucking Co., 293 F.3d 120, 127 (3rd Cir. 2002).  The determination is made by examining various factors, such as the final destination designated on the document, the conduct of the shipper and carriers, and whether the connecting carriers were compensated by the payment made to the initial carrier or by separate consideration from the shipper.  Seguros Comercial Americas, S.S. de C.V. v. Am. President Lines, Ltd., 910 F. Supp. 1235, 1239 (S.D. Tex. 1995) (Lake, J.), vacated on other grounds, 105 F.3d 198 (5th Cir. 1996).

### III.  DISCUSSION

In a verified filing in support of its motion to remand, Golden alleges that it issued Apparel international a "straight bill of lading."  (Dkt. 10 at 2.)  The record contains two copies of the straight bill.  (Dkt. 10 at 4; Dkt. 11-1 at 2.)  Both copies are dated September 22, 2009.  Both list Apparel International as the shipper and Danny Herman as the carrier, and both state "Freight prepaid by Golden Logistics'."  One of the copies is signed by Danny Herman's agent, and bears stamps indicating the load's receipt at Hebron on October 9, 2009.  (Dkt. 10 at 4.)  The other copy, submitted by Golden, is not signed.  (Dkt. 11-1 at 2.)  It lacks the Hebron stamps, but it bears a Mexican customs stamp memorializing the load's export at Nuevo Laredo.  (Id.)

Danny Herman issued a separate bill of lading to Golden for the Laredo-to-Hebron carriage.  (Dkt. 6-1 at 9–10.)  However, that does not preclude the possibility that the entire Torreon-to-Hebron journey proceeded under a through bill.  Once a through bill of lading has been issued to the carrier who initially receives a load for shipment, the character of the shipment is not affected by connecting carriers' bills of lading that serve merely as receipts.  See Mexican Light & Power Co. v. Texas Mexican R. Co., 331 U.S. 731, 734 (1947) ("No matter what the convenience which a consignee may derive from a bill of

9 / 11

lading issued by a connecting carrier on a through shipment, unless the connecting carrier has received a consideration for the bill of lading in addition to that which flowed under the bill of lading issued by the initiating carrier, the Carmack Amendment makes such second bill of lading void."); <u>Marine Office of American v. NYK Lines</u>, 638 F. Supp. 393, 398 (N.D. Ill. 1985) ("A through bill of lading governs the entire transportation of goods and applies to connecting carriers even though they are not parties to the contract.  This is true regardless of whether the connecting carrier issues a new bill of lading, as the new contract is treated as void for lack of consideration.")

The shipper in this case, Apparel, paid one entity, Golden, to arrange the entire Torreon-to-Hebron journey, and received a single bill of lading listing Apparel as the shipper, Danny Herman as the carrier, and Hebron as the final destination.  The copy Golden issued before the load had been exported out of Mexico was not signed, and the copy that was eventually signed was signed by Danny Herman's agent, not by Golden.   It nevertheless appears that the straight bill sufficed to make Golden liable to Apparel for the loss that was discovered after the load was delivered to Hebron.  The straight bill issued by Golden thus constitutes a single bill of lading for the entire carriage.  It was the only bill of lading issued to the shipper.

It was issued in consideration for a single payment for the entire journey to Hebron, and the entity which issued it, Golden, was liable for losses occurring at any point in the carriage. The Court finds that the straight bill of lading (Dkt. 10 at 4; Dkt. 11-1 at 2), constitutes a through bill of lading for the entire Torreon-to-Hebron carriage.  The Carmack Amendment therefore does not apply to the carriage, and Golden's state-law claims are not pre-empted.

## IV.  CONCLUSION

The Court does not have federal question jurisdiction over this suit.  The record does not indicate any other basis for Federal jurisdiction, and neither party asserts one.  Golden's motion to remand (Dkt. 3) is GRANTED.  Danny Herman's motion to dismiss is DENIED as moot.  This case will be REMANDED to the 111th Judicial District, Webb County, Texas.

DONE at Laredo, TX, this 12th day of August, 2011.

_____
George P. Kazen
Senior United States District Judge